O P I N I O N
Plaintiff-appellant Michelle Baughman appeals from the October 27, 2000, Judgment Entry of the Richland County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
On January 24, 1998, appellant Michelle Baughman went to Park Lanes Bowling Alley with her four children to attend the third birthday party of a friend's child. In total, five adults and thirteen to fifteen children were in attendance at the party.
After having cake and ice cream in a back room at the bowling alley, appellant and her two older children rented bowling shoes and then bowled for a couple of hours. During such time, appellant saw one of her children slip and fall on an oily substance located near the ball return machine. Appellant also noticed an oily substance on the bowling balls as they returned that she repeatedly had to wipe off of the balls.
During the party, a three year old dropped or rolled a bowling ball down a closed lane located next to the lane being used by appellant. Since the ball had stopped in the gutter, appellant crossed over the lane's foul line and bent down to retrieve the ball. After appellant retrieved the bowling ball, her feet flew out from under her, causing her to fall and fracture her wrist.
Subsequently, on September 7, 1999, appellant and her husband, Ralph Baughman, filed a complaint against appellee Park Lanes, Inc., and against appellees William B. Lewis d.b.a. Park Lanes, Inc., and Ashland Bowling Centers, Inc., the owners of appellee Park Lanes, Inc., in the Richland County Court of Common Pleas. Appellant, in her complaint, alleged, in part, as follows:
 At the above time and place, there was an unreasonably dangerous condition located on said premises which condition the Defendants created and had actual knowledge of. Further, Defendants failed to remedy or repair such condition and failed to warn Plaintiff Michelle Baughman of its existence, to wit: Defendants had applied an oily substance known as "lane conditioner" on and around the bowling lanes. Such substance was exceedingly slippery and presented a great risk to Plaintiff Michelle Baughman and other similarly situated invitees. Such dangerous condition was undetectable to a person using ordinary care and created an unreasonable risk of bodily injury to anyone walking in or around through the area described.
 Defendants knew of and created the above dangerous condition and were negligent in their failure to properly maintain, inspect and/or remove the oily substance from the area where Defendants knew that Plaintiff Michelle Baughman and other invitees would be walking, and were negligent in allowing an unreasonably dangerous condition to exist on the premises and were further negligent in failing to warn Plaintiff Michelle Baughman of said dangerous condition.
 As a direct and proximate result of the negligence of the Defendants, Plaintiff Michelle Baughman slipped on the oily substance and fell to the floor.
An answer was filed by appellees on October 4, 1999, and an amended answer on October 14, 1999.
With leave of court, appellees, on September 18, 2000, filed a Motion for Summary Judgment. Appellees, in their motion, argued that the use of the lane conditioner on the portion of the bowling lane past the foul line was an open and obvious condition. Appellees also argued that they had no liability to appellant since appellant was an active, voluntary participant in a recreational /sporting activity and there was no evidence demonstrating reckless or intentional conduct on behalf of appellees. A memorandum in opposition to the Motion for Summary Judgment was filed by appellant on October 3, 2000, to which appellees filed a reply six days later.
As memorialized in a Judgment Entry filed on October 27, 2000, the trial court granted appellees' Motion for Summary Judgment. The trial court, in its entry, specifically held that "the Civ.R. 56(C) sworn evidence placed before the court fails to create issues of material fact for two independently sufficient reasons:(1) The bowling alley proprietor was not negligent. (2) The plaintiff falls under the more specific legal relationships applying to athletic participation."
It is from the trial court's October 27, 2000, Judgment Entry that appellant now prosecutes her appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT BECAUSE THERE WAS SUFFICIENT EVIDENCE TO DEMONSTRATE THAT THE DEFENDANT BREACHED ITS DUTY TO KEEP ITS PREMISES IN A REASONABLY SAFE CONDITION SO AS NOT TO EXPOSE ITS INVITEES SUCH AS PLAINTIFF TO AN UNREASONABLY DANGEROUS CONDITION.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT BECAUSE AT THE TIME OF HER FALL PLAINTIFF WAS NOT ENGAGED IN "ATHLETIC PARTICIPATION" SUCH AS WOULD REQUIRE A SHOWING OF RECKLESS OR WILLFUL CONDUCT ON THE PART OF DEFENDANT.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ. R. 56(C) states in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1966), 75 Ohio St.3d 280.
It is based upon this standard we review appellant's assignments of error.
 I, II
Appellant, in her two assignments of error, argues that the trial court erred in granting appellees' Motion for Summary Judgment since there was sufficient evidence to demonstrate that appellees breached their duty to keep the premises in a reasonably safe condition and since, at the time of her fall, appellant was not engaged in athletic participation. We agree.
To defeat a motion for summary judgment filed by a defendant in a negligence action, a plaintiff must identify a duty owed to him or her by the defendant which was breached by the defendant and which proximately caused the plaintiff's injury. Keister v. Park Centre Lanes (1981),3 Ohio App.3d 19, syllabus.
There is no dispute in the case sub judice that appellant was a business invitee of appellee Park Lanes. A business owner owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so as not to unreasonably expose its customers to danger. Paschal v. Rite Aid Pharmacy, Inc.(1985), 18 Ohio St.3d 203. However, a business owner is not the insurer of its customer's safety.Id. Furthermore, a business owner has no duty to protect his customer from conditions which are known to the customer or are so obvious and apparent that the customer may reasonably be expected to discover them and protect himself against them. Sidle v. Humphrey (1968) 13 Ohio St.2d 45, paragraph one of the syllabus. The business owner's duty is to warn against latent or concealed defects. Parsons v. Lawson Co. (1989)57 Ohio App.3d 49, 50.
Viewing the evidence in the light most favorable to appellant, this Court finds that the trial court erred in granting appellees' Motion for Summary Judgment since reasonable minds can differ as to whether the condition causing appellant to fall was an open and obvious condition which appellant had a duty to protect herself against. During his deposition, Harold Holter, appellees' employee, testified that he applies lane conditioner to the bowling lanes one or twice a day in accordance with ABC (American Bowling Congress) specifications[1]. Because of the slipperiness of the conditioned lanes, Holter wears special shoes with oil resistant soles while conditioning the lanes. During his deposition, Holter testified that, despite wearing the shoes, he has fallen on the conditioned lanes more than two but less than six times.
Appellant, during her deposition, testified that she had no knowledge of the slipperiness of the bowling lanes past the foul line. The following is an excerpt from appellant's testimony:
 What about the bowling lanes themselves when you get past that black line [the foul line], are you aware that they are gonna be slick?
A. No.
 Q. It's your testimony that you have no knowledge that they can be slippery if you step over the line?
 A. I always understood if you go over the foul line, which I wasn't, I just had barely even stepped over the foul line, that you have points taken away from your score.
 Q. But your testimony today is that you had absolutely no knowledge at all that the bowling lanes themselves could be slippery?
 A. I know they can be smooth, you know, so you can get the ball down there.
 Q. So you think that they are smooth, but you have no personal knowledge that they're, if you step over that line you could fall, that it's slippery? In fact, I think you used the term like ice?
A. Right.
Q. You had no knowledge of that?
A. Right.
 Q. You had seen oil come up on the ball. Were you aware that the lanes had oil on them?
A. No, ma'am.
 Q. Where did you think the oil on the ball was coming from, where you —
 A. I didn't know if it's like a cleaner that once the ball goes down in through it, you see what I'm saying, if it's a, like a cleaner or something when they come back through.
 Q. So you are telling me that you think the substance came from when it was coming up the ramp?
 A. I'm not sure of that. What I am saying is I don't know how the machine works and, or whatever, when it comes out. I know it was — I don't —
Deposition of Appellant Michelle Baughman at 26-27. Appellant further testified that while she had bowled in the past, she had never bowled at appellees' bowling alley before.
During his desposition, appellee William Lewis, the owner of appellee Park Lanes, testified that, on other occasions, bowling balls have become stopped in the gutters. According to Lewis, in such cases, "we immediately call them [the bowler] and tell them to stay off the lane, that they are not allowed past the foul line." Deposition of William Lewis at 15. When questioned, Lewis agreed that customers were told that they were not allowed past the foul line since he didn't want customers "falling because [of] the oils on the lane." Deposition of William Lewis at 15.
However, in addition to appellant's asserted lack of knowledge of the slippery condition of the bowling lanes, appellee Lewis testified during his deposition that he was unsure if anyone warned appellant on the day of the birthday party not to cross the foul line. During his deposition, appellee Lewis, who knew that appellant was a guest at a child's birthday party, specifically testified as follows when asked whether appellant had been warned:
 A. I don't know if anyone warned her [appellant] that day or not. Normally, unless they are people that says that we have never bowled before, we don't. We just assume that everyone knows that the foul line is not to be crossed. If occasionally we'll get a new group of people in that say, This is the first time we have ever bowled, we then will warn them and tell them never to go past the foul line, that it could be a dangerous situation. And, but if — if we feel that they have been in there before and they have bowled before, we assume that they know that the foul line is not to be crossed.
 Q. Are you saying that there's some policy that you have with your personnel at the front desk that they are to determine before they give somebody a lane whether or not the person has bowled before?
 A. We don't — normally, if a person comes up, or a group comes up, we don't normally ask them, Have you ever bowled before. The majority of the people that come in there have bowled before. But if someone would say to us, We have never bowled before, what do we do? Then we would probably warn them to stay behind the foul line, you've got to have rental shoes, and point out the kind of balls they should be using, where they can find it, and things like of that order [sic].
Deposition of William Lewis at 17-18.
In short, based on the foregoing, we find that there are genuine issues of material fact in dispute as to whether the condition presented by the oiled lane was open and obvious and as to whether appellees breached their duty to appellant by failing to warn her of the same.
As noted previously, the trial court, in granting appellees' Motion for Summary Judgment, also held that appellees were entitled to summary judgment since appellant "falls under the more specific legal relationships applying to athletic participation." The trial court, in its entry, specifically cited to Marchetti v. Kalish (1990),53 Ohio St.3d 95 for the proposition that a person who participates in a recreational or sports activity assumes the ordinary risks of injury from that activity and cannot recover for an injury unless the alleged tortuous acts were reckless or intentional. The trial court further noted that, in the case sub judice, appellees could not be held liable to appellant since there was no indication that appellees acted recklessly or intentionally.
In Marchetti, the plaintiff, a thirteen year old girl, sued the defendant, a fifteen year old boy, alleging that he had negligently and willfully and wantonly injured her in a neighborhood "kick the can" game. The Court in Marchetti noted that "historically, the courts have been reluctant to allow persons to recover money damages for injuries received while participating in a sport, especially a contact sport, unless there was a deliberate attempt to injure. In denying recovery, the courts have often explained that a person who participates in a sport assumes the risk that he or she may be injured." Marchetti, supra, at 97. The court, in holding that an individual engaged in a recreational or sports activity cannot recover for any injury unless it can be shown that the other participant's actions were either "reckless" or "intentional," concluded that "a player's reckless disregard for the safety of his fellow participants cannot be tolerated." Id. at 99.
Marchetti and its progeny address the issue of liability of a participant in a sporting event to either another participant or to a spectator. However, in the case sub judice, in contrast to the cases cited by appellees, appellant is not contending that her injury was caused by a fellow bowler. Rather, appellant is arguing that her injury was caused by the condition of the premises. In addition, appellant's injury did not occur while she was participating in or observing a game of bowling. Thus, Marchetti and other cases cited by appellees are not applicable.
Based on the foregoing, we find that the trial court erred in granting appellees' Motion for Summary Judgment. Appellant's two assignments of error are, therefore, sustained.
Accordingly, the judgment of the Richland County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings.
 __________________________ , Edwards P.J
By Gwin, J. concurs, and Boggins, J. dissents.
[1] The lane conditioner is applied to make the lanes slippery so that when the bowling ball is thrown down the lane, it doesn't seize up.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings. Costs to appellees.